UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| Joshua Bedard,<br><br>   Plaintiff,<br><br>   v.<br><br>Centurion of Vermont, LLC,[1]<br><br>   Defendant. | Civil Action No. 5:20–cv–161–gwc–kjd |

**ORDER AND REPORT AND RECOMMENDATION**
(Docs. 9, 12, 13)

*Pro se* plaintiff Joshua Bedard brings this action against Centurion of Vermont, LLC (Centurion) pursuant to 42 U.S.C. § 1983, alleging that Centurion violated his constitutional rights by failing to provide him adequate medical treatment. At the time of the alleged violations, Bedard was a pretrial detainee at Southern State Correctional Facility (SSCF) in Springfield, Vermont. He specifically claims that Centurion stopped his suboxone regimen for a period of months to retaliate against him for filing a grievance against Centurion staff members and pursuing a related action in state court. He also claims that Centurion's alleged conduct constituted medical malpractice.

Presently before the Court is (1) Centurion's Motion to Dismiss Bedard's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (Doc. 13), (2) Bedard's Motion for a Continuance (Doc. 9), and (3) Bedard's Motion for Access to Court Record (Docs. 9, 12). For the reasons set forth below, I recommend that Centurion's Motion to

---

[1] Although the caption of Bedard's Complaint identifies Defendant as "Centurion Medical Services," Defendant advises that its legal name is "Centurion of Vermont, LLC." (Doc. 13 at 1.)

Dismiss be GRANTED with leave to amend the Complaint.  I further recommend that Bedard's Motion for a Continuance be DENIED as moot.  I also GRANT Bedard's Motion for Access to Court Record and direct the Clerk of Court to provide Bedard a copy of the court filings in his case to date.

## Factual and Procedural Background

The Court draws the following facts from the Complaint and accepts them all as true for purposes of resolving Centurion's Motion to Dismiss.  The Vermont Department of Corrections contracts with Centurion for the provision of medical services to inmates.  (Doc. 4 at 4.)  In January 2018, Centurion diagnosed Bedard as "opiate dependent" and prescribed him suboxone.  (*Id.* at 4, 5.)  This prescription continued until approximately December 2019 or January 2020, when Bedard filed a "Rule 75" proceeding in state court challenging how his medications were administered.  (*Id.* at 4–5, 7.)[2]  Also in January 2020, Centurion determined that Bedard was initially misdiagnosed and stopped giving him medication altogether.  (*Id.* at 4, 5.)  According to Bedard, Centurion's decision to stop administering suboxone due to an initial misdiagnosis was pretextual.  He alleges that, in fact, Centurion took away his suboxone to retaliate against him for filing a grievance and accessing the courts.  (*Id.* at 5.)

After Centurion stopped administering his suboxone, Bedard began experiencing "severe" symptoms of detoxification, including "vomiting, diarr[hea], stomach cramps, cold sweats, loss of sleep for weeks, restless leg and arm syndrom[e], hot flash[e]s, and muscle cramping." (*Id.* at 4–5.)  He does not specify how long he experienced these symptoms.

---

[2] Vermont Rule of Civil Procedure 75 generally provides a mechanism for review of "[a]ny action or failure or refusal to act by an agency of the state." Vt. R. Civ. P. 75.  According to his Complaint, Bedard filed an unsuccessful grievance at SSCF that encompassed the claims that he asserts in this federal action. (Doc. 4 at 4, 7.)  In addition to undertaking the prison grievance process, Bedard alleges that he pursued an "emergency injunction" and a Rule 75 proceeding in state court. (*Id.* at 7.)

2

Centurion resumed his suboxone regimen seven months later.  Bedard was receiving his medication at the time he filed his federal Complaint in this Court.  (*Id*. at 4.)  He ultimately alleges that Centurion "detoxed [him] for accessing the court."  (*Id.* at 5.)

Bedard brings this action against only Centurion; he does not name any individuals responsible for his alleged mistreatment.  (Doc. 4.)  He asserts claims under 42 U.S.C. § 1983, alleging that Centurion violated his Eighth and Fourteenth Amendment rights based on "medical malpractice, deliberate indifference, and . . . retaliatory actions for . . . exhausting his right to access the courts."  (Doc. 4 at 3.)  Bedard seeks $1 million in compensatory damages for Centurion's "malicious detoxing," $500,000 in punitive damages for Centurion's alleged retaliatory conduct, and "reimbursement" for the pain and suffering arising from its alleged infliction of "cruel and unusual punishment."  (*Id.* at 5.)

## **Legal Standard**

The Court is required to read a self-represented plaintiff's complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).[3]  The Court must review a *pro se* complaint with "special solicitude," construing it to raise the strongest arguments it suggests.  *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016).

In determining whether a complaint states a claim, the Court must "accept as true all of the allegations" and determine whether the claim is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible only when the facts in the complaint support a "reasonable inference" that the defendant is liable for the purported misconduct.  *Id.*  These factual allegations need not

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

3

be detailed. *Twombly*, 550 U.S. at 555. They must, however, present "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Although the Court must afford "special solicitude" to the allegations of a *pro se* plaintiff, the complaint nevertheless must satisfy the plausibility standard set forth in *Iqbal*. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). Finally, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## Discussion

### I. Centurion's Motion to Dismiss

Construed liberally, Bedard's Complaint alleges claims under § 1983 for "deliberate indifference and . . . retaliatory actions" for exercising his "right to access the courts" in violation of the First and Fourteenth Amendments,[4] as well as a state-law claim for medical malpractice. (Doc. 4 at 3.) Centurion requests that the Court dismiss the § 1983 claims and decline to exercise supplemental jurisdiction over his state-law claim. (Doc. 13.) Bedard has not responded to Centurion's Motion.

#### A. Section 1983

Under 42 U.S.C. § 1983, a plaintiff may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alteration and omissions in original) (quoting 42 U.S.C.

---

[4] Although Bedard asserts a deliberate-indifference claim under the Eighth Amendment, the Second Circuit has explained that "[a] pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

Additionally, Bedard's retaliation claim is properly considered under the First and Fourteenth Amendments. *See Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988) (noting in context of retaliation claim that the First and Fourteenth Amendments "implicate [an inmate's] broader right to petition government for redress of grievances").

§ 1983). Section 1983 does not itself establish federally protected rights; it "provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt*, 504 U.S. at 161. In order to state a claim under § 1983, a plaintiff must: (1) "allege the violation of a right secured by the Constitution and laws of the United States," and (2) show that "the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

**B.     Bedard has not stated claims for relief under 42 U.S.C. § 1983.**

Bedard has not identified the individuals responsible for his alleged constitutional deprivations. In addition, he has not alleged that Centurion employees' allegedly unlawful conduct resulted from a Centurion policy or custom. As a result, he has not stated claims for relief under § 1983.

**1.     Bedard has not identified the individuals allegedly responsible for the claimed unlawful conduct.**

Fundamentally, "[i]n order to establish individual liability under § 1983," the claimant must first show "that the defendant is a 'person' acting 'under the color of state law.'" *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004); *see also Mallgren v. Burkholder*, 52 F. Supp. 3d 490, 495 (E.D.N.Y. 2014) ("Section 1983 claims generally must be brought against the individuals personally responsible for the alleged deprivation of constitutional rights . . . ."). The law requires this showing because the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Back*, 365 F.3d at 122. In some circumstances, a private actor may qualify as a "person

5

acting under color of state law" in causing a constitutional deprivation. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 (1982).

Bedard names only Centurion as the defendant in his Complaint; he has not identified the individuals responsible for the alleged deprivation of his constitutional rights. Consequently, his Complaint survives dismissal only if he attributes the alleged constitutional violations to Centurion as a person acting under color of state law. As this Court has previously noted, Centurion is arguably more than a mere private corporation, as it provides medical care to prisoners on behalf of the State of Vermont. *Chinnici v. Centurion of Vermont, LLC*, Civil Action No. 2:16-cv-264-wks-jmc, 2018 WL 6002116, at *9 (D. Vt. Oct. 10, 2018); *see also Hayes v. Corizon Health, Inc.*, Case No. 4:19cv97/MW/EMT, 2020 WL 6219833, at *6 (N.D. Fla. Sept. 22, 2020) (noting that Centurion was "the functional equivalent of the State under section 1983" because it had contracted with the State "to provide medical services to inmates"), *report and recommendation adopted*, Case No. 4:19cv97-MW/EMT, 2020 WL 6206012 (N.D. Fla. Oct. 22, 2020); *see also Kavazanjian v. Rice*, No. 03-CV-1923 (FB)(SMG), 2008 WL 5340988, at *12 (E.D.N.Y. Dec. 22, 2008) ("Non-public medical providers have sometimes been deemed 'state actors' when treating prisoners of the state, such as where private medical professionals work inside a prison facility, or where off-site private hospitals have an ongoing contractual arrangement with prisons.").

Even assuming that Centurion is a state actor, however, Bedard has not alleged that its employees caused the alleged constitutional deprivations by acting pursuant to Centurion policy or custom.

### 2. Bedard has not alleged a Centurion policy or custom caused its employees to violate his constitutional rights.

Generally, an employer is not liable for its employees' actions under the tort theory of respondeat superior in suits brought under § 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981). Although this rule was initially established in the context of municipal employers, it has been extended to private employers as well. *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990). Private employers are not liable for the constitutional torts of their employees "unless the plaintiff proves that 'action pursuant to official . . . *policy* of some nature caused a constitutional tort.'" *Id.* at 408 (omission in original) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)); *see also Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 790 n.2 (7th Cir. 2014) (collecting cases extending the *Monell* standard to private companies).

A plaintiff must allege that the defendant's actions were attributable to "(1) a formal policy officially endorsed by the [employer]; (2) actions taken by [those responsible] for establishing the [policy] that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the . . . employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010); *accord Dumel v. Westchester Cnty.*, No. 19-CV-2161 (KMK), 2021 WL 738365, at *4–7 (S.D.N.Y. Feb. 25, 2021).

Bedard's claim fails because he has not alleged that a Centurion policy or practice caused its employees to deprive him of a constitutional right. Bedard asserts that he received suboxone

for two years, and that it was taken away after he filed a court action against Centurion. (Doc. 4 at 4.) He alleges that eventually Centurion restored his suboxone prescription. (*Id.*) The Court cannot reasonably infer from these allegations that Bedard stopped receiving suboxone due to a formal Centurion policy that denied treatment to inmates who file grievances. Moreover, even assuming that Bedard received medically inappropriate treatment at SSCF, Centurion cannot be held liable under § 1983 for its employees' tortious actions if they were not performed pursuant to policy or custom. *See Monell*, 436 U.S. at 691.

In addition, Bedard has not alleged that any other type of Centurion policy, custom, or usage caused his injuries. For example, Bedard does not identify actions taken by any individuals with policymaking authority that caused the deprivation of his rights. Nor has Bedard alleged "a practice so consistent and widespread" that it amounted to a custom or usage of which Centurion should have been aware. *Brandon*, 705 F. Supp. 2d at 276–77. For instance, he has not alleged that Centurion employees withheld any other inmates' medication after those inmates filed a grievance or court action. To the contrary, he alleges only that Centurion subjected him to mistreatment after he filed a grievance. (Doc. 4 at 4); *see Villafane v. Sposato*, CV 16-3674 (JFB) (AKT), 2017 WL 4179855, at *18 (E.D.N.Y. Aug. 22, 2017) (holding that plaintiff inmate did not allege medical care provider had a policy or custom when "complaint concern[ed] only allegedly unconstitutional conduct to which [plaintiff] was subjected"), *report and recommendation adopted*, 16-CV-3674 (JFB) (AKT), 2017 WL 4157220 (E.D.N.Y. Sept. 15, 2017). Finally, Bedard does not claim a deficiency in Centurion's training or supervision protocols "to such an extent that it amount[ed] to deliberate indifference" to his rights. *Brandon*, 705 F. Supp. 2d at 277; *see Rivera v. Westchester Cnty.*, No. 18-CV-8354, 2019 WL 3958425,

at *5 (S.D.N.Y. Aug. 22, 2019) (finding failure-to-train claim insufficient where plaintiff "cited no specific deficiency in . . . training or supervision protocols").

Because Bedard has not alleged that medical staff acted pursuant to policy or custom when allegedly engaging in conduct that deprived him of his constitutional rights, he has not stated a § 1983 claim against Centurion for violations of the First and Fourteenth Amendments. *See Arroyo v. City of Buffalo*, 15-CV-753A(F), 2017 WL 3085835, at *7 (W.D.N.Y. July 20, 2017), *report and recommendation adopted*, 15-CV-753, 2018 WL 488943 (W.D.N.Y. Jan. 20, 2018).

I therefore recommend that the district court dismiss Bedard's § 1983 claims.

### C.   Supplemental Jurisdiction

In cases over which a district court has original jurisdiction, it shall also have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). A court may decline to exercise supplemental jurisdiction over state-law claims, however, if the court "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). If the plaintiff "has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims." *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). Because I recommend dismissal of Bedard's federal claims against Centurion, I further recommend that the Court

decline to exercise supplemental jurisdiction over the medical malpractice claim in Bedard's Complaint.

## II. Bedard's Motion for Copies of Court Filings and Motion to Extend Deadlines

Bedard also requests (i) that the Court provide copies of the entire court record, including a "full copy of [his] discovery" (Doc. 9 at 2; Doc. 12 at 1–2) and "everything that was ever filed by each party" (Doc. 12 at 2),[5] and (ii) that the Court extend by six months "all court proceedings and deadlines on all Motions." (Doc. 9 at 2.) Bedard states that he requires additional time after "repeat[ed]ly request[ing] his missing legal work" without receiving it, as well as being denied "any and all access to the law library." (*Id.* at 1–2.) He consequently has had "no way to do the proper legal research needed to proceed with this case." (*Id.* at 2.) He states that "[his] only copy of everything [he] filed" was lost during his transfer to segregation. (Doc. 12 at 1.) It also appears that Bedard is unable to access court filings from SSCF. (*See* Doc. 9 at 1–2.) Bedard's request for the court record therefore includes "everything that was ever filed by each party, including [Bedard]." (Doc. 12 at 2.)

The court filings in this case are limited, consisting primarily of Bedard's Complaint, his Motions to extend deadlines and for copies of court records, and Centurion's Motion to Dismiss. I therefore grant this request and direct the Clerk of Court to provide Bedard a copy of all filings to date in this case. *See Taylor v. Supreme Ct. of N.Y.*, No. 13-CV-4621 (KAM)(RLM), 2013 WL 6073576, at *2 (E.D.N.Y. Nov. 18, 2013) (granting prisoner's request for copies of court documents as the court was "mindful of the fact that [plaintiff] is incarcerated and may not have ready access to court filings"). Additionally, because I recommend granting Centurion's Motion

---

[5] Based on its review of Bedard's filings in this matter to date—several of which request "discovery" and "filings" related to the pending action—the Court interprets the referenced items as one request for copies of the court filings in this case. (*See* Doc. 9 at 1; Doc. 12 at 1, 2.)

10

to Dismiss and giving Bedard an opportunity to file an amended complaint, I recommend that the court deny as moot his request for an extension of deadlines. (Doc. 9.)

### III. Leave to Amend

A *pro se* plaintiff should ordinarily be given the opportunity to amend if, when read liberally, the complaint contains "any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009). A district court may deny leave to amend when an amendment would be futile. *Hill*, 657 F.3d at 123. As it is not evident at this stage that an amendment would be futile, I recommend that the Court grant Bedard leave to amend his Complaint.

In the event Bedard chooses to file an amended complaint, he must include all factual allegations and claims against all defendants, as well as specify the relief he seeks. With respect to each claim against each defendant who committed an alleged wrongful act against him, Bedard must describe each defendant's specific involvement in the alleged constitutional deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). As any such amended complaint will replace the existing complaint, Bedard cannot rely upon or incorporate by reference any previously filed pleading or document. *See* Fed. R. Civ. P. 8(a); L.R. 15(b); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Finally, any amended complaint must comport with the Federal Rules of Civil Procedure, including setting forth short and plain statements of each claim as required by Rule 8, and doing so in numbered paragraphs as required by Rule 10. For further reference, Bedard may consult *Representing Yourself as a* Pro Se *Litigant Guide*, available at http://www.vtd.uscourts.gov/sites/vtd/files/ProSeGuide113015.pdf.

**Conclusion**

For the reasons set forth above, I recommend that Centurion's Motion to Dismiss (Doc. 13) be GRANTED and that Bedard's Motion for a Continuance (Doc. 9) be DENIED as moot. I further recommend that, if this Report and Recommendation is adopted by the court, Bedard be allowed 30 days to file an amended complaint. Failure to file an amended complaint within that time frame should result in the dismissal of Bedard's claims with prejudice.

I also GRANT Bedard's Motion for Access to Court Record (Docs. 9, 12). The Clerk of Court is respectfully requested to provide Bedard a copy of the filings in the case to date.

Dated at Burlington, in the District of Vermont, this 27th day of August 2021.

*/s/ Kevin J. Doyle*
Kevin J. Doyle
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).