UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Joshua Bedard,

      Plaintiff,

      v.                          Civil Action No. 5:20–cv–161

Corey LeBlanc,

      Defendant.

**REPORT AND RECOMMENDATION**
(Doc. 60)

Plaintiff Joshua Bedard, a pretrial detainee proceeding *pro se*, brings this action under

42 U.S.C. § 1983 against Defendant Corey LeBlanc, who at the relevant time was employed as a

Physician Assistant at Southern State Correctional Facility (SSCF). Plaintiff alleges that he was

receiving medication-assisted treatment (MAT)[1] for opioid use disorder while residing at SSCF,

and that Defendant removed him from MAT after Plaintiff filed an action in Vermont Superior

Court seeking review of a medical staff decision to crush the medication before providing it to

inmates. After he was no longer receiving the medication for opioid use disorder, Plaintiff

alleges that he experienced multiple symptoms that caused him physical distress.

Plaintiff alleges that Defendant's decision to terminate his MAT constituted deliberate

indifference to his serious medical needs in violation of the Eighth Amendment, and further

constituted retaliation for Plaintiff filing a complaint in state court, in violation of the First

---

[1] "Medication-assisted treatment" is defined as "the use of U.S. Food and Drug Administration-approved medications, in combination with counseling and behavioral therapies, to provide a whole patient approach to the treatment of substance use disorders." 28 V.S.A. § 801(e)(5)(B); *see* 18 V.S.A. § 4750.

Amendment.  Defendant moves for summary judgment, asserting that his decision to discontinue MAT was based on a review of Plaintiff's medical records and a determination that the medication was not medically necessary.  With respect to Plaintiff's retaliation claim, Defendant asserts that he was unaware of Plaintiff's state-court complaint at the time he determined to remove Plaintiff from MAT.  In support of his Motion, Defendant attached a copy of Plaintiff's Verified Amended Complaint, the parties' stipulated discovery schedule, his Answer to Plaintiff's Verified Amended Complaint, his responses to Plaintiff's interrogatories, and a Statement of Undisputed Facts.  (Docs. 60-2–60-5, 60-8).[2]  Plaintiff filed a response and his own Affidavit in opposition to Defendant's Motion.  (Docs. 69, 69-1.)

For the reasons explained below, I recommend that the Court grant Defendant's Motion for Summary Judgment (Doc. 60), and dismiss Plaintiff's Verified Amended Complaint (Doc. 33).

## Procedural History

Plaintiff initially filed a § 1983 complaint in this Court against Centurion of Vermont, LLC.  (Doc. 4.)  He alleged that Centurion stopped providing him Suboxone for a period of months to retaliate against him for filing a grievance against Centurion staff members and pursuing a related action in state court.

The Court dismissed Plaintiff's Complaint on October 7, 2021, concluding that Plaintiff had "not identified the individuals responsible for the alleged constitutional deprivations or that Defendant's employees' allegedly unlawful conduct resulted from a policy or custom of

---

[2]  In conjunction with the filing of the Motion for Summary Judgment, counsel for Defendant served on Plaintiff a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment."  (*See* Doc. 60-6.)  Local Rule 56(e) requires service of this notice to advise a self-represented party that he or she may not oppose a motion for summary judgment "simply by relying upon the allegations in [his or her] complaint," and that he or she "must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising issues of fact for trial."

Defendant." (Doc. 17 at 2–3.) The Court also permitted Plaintiff to file an Amended Complaint. (*Id*. at 3.) Plaintiff filed an Amended Complaint on October 14, 2021 (Doc. 18), alleging similar claims against numerous DOC defendants. Defendants moved to dismiss the Amended Complaint. (Doc. 30.) Plaintiff did not respond to the Motion to Dismiss, but instead filed a Verified Amended Complaint against Defendant Corey LeBlanc in his individual capacity. (Doc. 33.) Defendant answered the Verified Amended Complaint and the case proceeded to discovery pursuant to a stipulated discovery schedule. (Doc. 46.) The docket reflects that Defendant responded to Plaintiff's First Set of Interrogatories on October 11, 2022. The docket does not reflect that additional discovery was conducted.

After Defendant filed his Motion for Summary Judgment, the Court granted Plaintiff's three requests for extensions of time prior to his submission of a response to the Motion for Summary Judgment. (Docs. 64, 66, 68, 69.)

## **Factual Background**

### I.    **Plaintiff's Allegations**[3]

Given that Plaintiff conducted only very limited discovery in this case (apparently consisting of one set of interrogatories), the Court has attempted to consider *all* the facts Plaintiff has asserted, including those in the Verified Amended Complaint. The Court notes, however, that Plaintiff has not placed in the record any verifying medical evidence, witness statements, grievance documents, state-court records relevant to his retaliation claim, or any other evidence.

---

[3] The facts in this section are derived from the allegations in Plaintiff's Verified Amended Complaint. (Doc. 33.) As noted, the record does not contain any documentary evidence or witness statements confirming the alleged facts. Although the Court must "accept as true the allegations of the party defending against the summary judgment motion, drawing all reasonable inferences in his favor," "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Plaintiff has only submitted his own Affidavit in response to Defendant's Motion for Summary Judgment, which the Court has considered, as discussed below.

At all relevant times, Plaintiff was a pretrial detainee in the care and custody of the Vermont Department of Corrections (VDOC). (Doc. 33 at 2, ¶ 3.) Defendant was a Physician Assistant who provided medical services for the VDOC. (*Id.* at 2–3, ¶ 4.) Plaintiff was inducted into the VDOC MAT program on or about January 2018 after an assessment of severe opioid dependence. (*Id.* at 3–4, ¶ 7.) Plaintiff was reassessed for opioid dependence on approximately five occasions throughout the course of his treatment and was continued on the MAT program. (*Id.* at 4, ¶ 8.) In January 2020, the VDOC "instituted or reinforced a policy" in which medical service providers were required to distribute the MAT medication in a crushed form, which Plaintiff alleges is contrary to the manufacturer's recommendations. (*Id.* at 4–5, ¶ 9.) Plaintiff filed an action in Superior Court under Vermont Rule of Civil Procedure 75 seeking review of medical providers' distribution of the medication in crushed form.[4] (*Id.* at 5, ¶ 10); *see Bedard v. Centurion Medical Services*, Case No. 92-2-20 Wncv.

After Plaintiff filed his state-court case, Defendant advised Plaintiff that he would be removed from the MAT program and would no longer receive MAT treatment medication. (Doc. 33 at 5–6, ¶ 11.) Plaintiff submitted several grievances to DOC officials alleging retaliation based on his filing the state-court action. (*Id.* at 6, ¶ 13.) The grievances resulted in no relief. (*Id.* at 7, ¶ 17.) After his removal from MAT medication, Plaintiff experienced withdrawal symptoms, including "severe vomiting, diarrhea, stomach pains, cold sweats, hot

---

[4] In his Verified Amended Complaint, Plaintiff states that he filed his state-court action "on or about January of 2020" (Doc. 33 at 5, ¶ 10). In the Affidavit attached to his response to Defendant's summary judgment motion, however, he states he filed suit "[o]n or about February of 2020" (Doc. 69-1 at 2). Having reviewed the relevant state-court docket using the case number Plaintiff references in his papers, the Court takes judicial notice that Plaintiff's state-court action was filed on February 18, 2020. *See Bedard v. Centurion Medical Healthcare*, Case No. 92-2-20 Wncv.

flashes, muscle cramping, restless arm and leg syndrome, and loss of sleep" for approximately three months. (*Id.* ¶ 15.) During this period, "[p]laintiff "submitted multiple medical sick-call slip[]s aver[r]ing he was suffering detox symptom[]s and these requests/pleas for medical help went unanswered and he rec[ei]ved absolutely no assistance during detox." (*Id.* ¶ 16.)

The Superior Court dismissed Plaintiff's complaint for failure to effectuate proper service. (Doc. 69 at 3.) At some point after Plaintiff filed his Complaint in this Court, Defendant "reconsidered his previous decision to remove [Plaintiff] from the MAT medication program" and he was "re-admitted into the Suboxon[e] MAT treatment." (Doc. 69-1 at 3.)[5]

## II. Defendant's Statement of Undisputed Facts

Defendant asserts that the following material facts are not in dispute:

- Defendant removed Plaintiff from MAT medication on January 15, 2020. Defendant reviewed Plaintiff's medical chart "after Plaintiff reported that he had no history of opioid use disorder and was utilizing the MAT program for his own enjoyment rather than its intended purpose." (Doc. 60-8 at 2, ¶ 6 (quoting Doc. 60-5 at 10).) "The chart review found that on 11-17-2017 Plaintiff reported a history of alcohol and cocaine abuse with no mention of opiate use; on 4-22-2018 there was an initial psych evaluation where plaintiff reported a history of alcohol and cocaine abuse; . . . and denied a history of opiate abuse. VPM[6] revealed only 1 prescription for opioids dated 5/2017." (*Id.* (quoting Doc. 60-5 at 9).)

---

[5] Plaintiff has not established these facts with record evidence and Defendant has not addressed whether Plaintiff is currently receiving Suboxone.

[6] The record does not explain the meaning of this acronym, but it appears to refer to a prescription database.

- Defendant "removed Plaintiff from the MAT medication, but did not remove him from the MAT program. Defendant LeBlanc encouraged Plaintiff to participate in the counseling services offered and offered Plaintiff medication for his alcohol addiction." (*Id*. ¶ 8 (citing Doc. 60-5 at 6).)

- Defendant "removed Plaintiff from the program because he determined, based on the review of Plaintiff's comments and medical records, that it was not medically necessary for Plaintiff to be on MAT medications." (Doc. 60-8 at 2, ¶ 8.) "Defendant LeBlanc is aware of risks for an individual taking MAT medication when the person does not have an opioid addiction. Moreover, an individual who does not carry the diagnosis for which the medication is intended is misusing prescription medication." (*Id*. (citing Doc. 60-5 at 6).)[7]

- Plaintiff has not submitted an expert report to support his claim that Defendant's decision to remove Plaintiff from MAT medication was medically inappropriate. (Doc. 60-8 at 2, ¶ 5.)

- Defendant "was not aware of the Vermont state court action until he reviewed the allegations contained in the Plaintiff's April 11, 2022 Amended Complaint." (*Id.* at 3, ¶ 9.)[8]

---

[7] Defendant's response to Interrogatory 16 also noted the following "common side effects of Buprenorphine: constipation, headache, nausea, vomiting, dizziness, fatigue, dry mouth, tooth decay, muscle aches, inability to sleep, fever, blurred vision or dilated pupils, tremors, palpitations, disturbance in attention, respiratory distress, overdose, adrenal insufficiency, dependence, withdrawal, itching, pain, swelling, and nerve damage." (Doc. 60-5 at 7–8, ¶ 16.) Several of these symptoms correlate with the symptoms Plaintiff alleges he experienced as a result of withdrawal after Defendant stopped providing Suboxone.

[8] In his Answer to the Verified Amended Complaint, Defendant denied that he was informed of Plaintiff's Rule 75 action in state court and denied that he removed Plaintiff from the MAT program because of the state-court action. (Doc. 37 at 2, ¶ 11; *see also* Doc. 60-5 at 9 ("Defendant became aware of Plaintiff's allegations when he was named as the only Defendant in his Amended Complaint in this action filed on April 11, 2022.").)

III.    **Plaintiff's Evidence Opposing Defendant's Motion for Summary Judgment**

In opposing Defendant's Motion for Summary Judgment and Statement of Undisputed Material Facts, Plaintiff has submitted his own Affidavit.[9]  The Affidavit includes the following material facts:

- After Plaintiff filed his state-court action, the medical provider held a meeting with Plaintiff.  "During the meeting, medical provider Corey LeBlanc specifically stated to [Plaintiff] that 'he reviewed [Plaintiff's] medical history and [found that Plaintiff does not] have an opiate history, [his] addiction pertains to alcoholism.  So, in order to reduce the concern of [Plaintiff's] medication being crushed[, Plaintiff] was being tapered down and removed from the MAT medication . . . ."  (Doc. 69-1 at 2.)

- Defendant refused to further discuss his decision to remove Plaintiff from the MAT medication.  Over subsequent days, Plaintiff's Suboxone dosages were reduced and eventually he was no longer provided the medication at all.  Prior to this change, Plaintiff had been receiving Suboxone for over fifteen months.  (*Id*. at 2–3.)

- Plaintiff had not met Defendant prior to filing his state-court action.  After filing his Complaint in federal court in 2020, Defendant "reconsidered his previous decision to remove [Plaintiff] from the MAT medication program."  Plaintiff was again placed on a Suboxone regimen.  (*Id*. at 3.)[10]

---

[9]  In addition to its factual assertions, Plaintiff's Affidavit incorporates his conclusions as to what occurred and questions Defendant's motives in taking the actions asserted in the Amended Complaint.  As appropriate in the resolution of a summary judgment motion, the Court limits the excerpts in this Report and Recommendation to those portions of the Affidavit that can be fairly interpreted as factual representations.

[10]  The Affidavit does not specify when Plaintiff claims to have resumed taking Suboxone.  Plaintiff avers that the timing of his re-admission to the MAT medication program relative to the filing of his federal lawsuit "can be shown through medical records."  (Doc. 69-1 at 4.)  However, Plaintiff has not placed any medical documentation in the record.

## Discussion

Plaintiff asserts that Defendant acted with deliberate indifference in violation of the Eighth Amendment when he terminated Plaintiff's use of MAT medication, declined to provide Plaintiff MAT medication to treat his opiate dependency, and denied Plaintiff medical care while he was suffering from withdrawal.[11] (Doc. 33 at 8–10, ¶¶ 19–22; *id.* at 11–12, ¶¶ 26–30.) Plaintiff specifically contends that Defendant's "failure . . . to act on his knowledge of a substantial risk of serious harm to [P]laintiff violated his Eighth Amendment right to be free from deliberate indifference to his health and safety." (*Id.* at 8, ¶ 19.) Additionally, Defendant's "refusal . . . to provide [P]laintiff [MAT] for his severe opiate disorder constituted deliberate indifference to [P]laintiff[']s serious medical needs in violation of the Eight[h] Amendment." (*Id.* at 9, ¶ 21.) Plaintiff also alleges that Defendant's decision to take Plaintiff off MAT medication after he filed a claim in state court "constituted retaliation for petitioning government for redress of grievances and therefore violated [P]laintiff[']s First Amendment" rights. (*Id.* at 10, ¶ 24.)

Defendant asserts that the undisputed material facts establish that Defendant was not deliberately indifferent to Plaintiff's medical needs, that Defendant was unaware that Plaintiff had engaged in protected conduct at the time he removed Plaintiff from MAT medication, and that he would have removed Plaintiff from MAT medication even in the absence of Plaintiff's state-court action. Defendant contends that Plaintiff's "self-serving affidavit[,] which reiterates

---

[11] Plaintiff also asserts that "Defendant violated [P]laintiff[']s Eighth Amendment right to medical care." (Doc. 33 at 13, ¶ 32.) "To establish an unconstitutional denial of medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (alteration in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Accordingly, this Report and Recommendation considers Plaintiff's "denial of medical care" claim under the deliberate indifference standard.

the conclusory allegations of the complaint in affidavit form, unsupported by any contemporaneous records, is insufficient to preclude summary judgment." (Doc. 70 at 1.)

## I.    Standard of Review

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* Factual disputes that are "irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. *Id.* If the moving party demonstrates that there are no genuine issues of material fact, the burden shifts to the nonmoving party, who must present "'significantly probative supporting evidence' of a disputed fact." *Hamlett v. Srivastava*, 496 F. Supp. 2d 325, 328 (S.D.N.Y. 2007) (quoting *Anderson*, 477 U.S. at 249). Where the nonmoving party "'fail[s] to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor' on an essential element of a claim on which the [nonmoving party] bears the burden of proof," the moving party is entitled to summary judgment. *Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 22 (2d Cir. 2012) (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010)).

In considering a motion for summary judgment, the court is "required to resolve all ambiguities and draw all factual inferences in favor of the nonmovant . . . ." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted); *see SEC v. Sourlis*, 851 F.3d 139, 144 (2d Cir. 2016) ("[T]he party against whom summary judgment is sought [must be] given the benefit of all permissible inferences and all credibility

assessments . . . .").  But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  "[H]e cannot defeat summary judgment by relying on the allegations in his complaint, conclusory statements, or mere assertions that affidavits supporting the motion are not credible."  *Hamlett*, 496 F. Supp. 2d at 328 (citing *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996)); *see Dasher v. N.Y.C. Police Dep't*, No. 94 CV 3847(SJ), 1999 WL 184118, at *1 (E.D.N.Y. Mar. 18, 1999) ("[T]he court should grant summary judgment where the nonmoving party's evidence is merely colorable, conclusory, speculative, or not significantly probative.").  The court's role in adjudicating a motion for summary judgment "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (quoting *Kaytor*, 609 F.3d at 545).

"The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Tassy v. Buttigieg*, 51 F.4th 521, 531 (2d Cir. 2022) (observing that "a plaintiff's affidavit must be based on concrete particulars, not conclusory allegations" (internal quotation marks and alteration omitted)).  "Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues."  *Lujan*, 497 U.S. at 888.  "A conclusory contradiction of undisputed evidence in a self-serving affidavit,

unsupported by other evidence, is not by itself sufficient to create a genuine dispute of material fact." *Cestaro v. Prohaska*, 22-cv-9444 (JSR), 2023 WL 4425737, at *2 (S.D.N.Y. July 7, 2023). "There is no law, however, preventing a court from relying on 'self-serving' affidavits— indeed, parties in a litigation routinely submit affidavits on their own behalf whose only purpose is to substantiate the claims alleged." *Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*, 239 F. Supp. 3d 710, 737 (S.D.N.Y. 2017). When assessing evidence, "[a] verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020).

Because Plaintiff is proceeding *pro se*, the Court must "read his pleadings 'liberally and interpret them to raise the strongest arguments that they suggest.'" *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003) (quoting *McPherson v. Coombe*, 174 F.3d 276, 290 (2d Cir. 1999); *see Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) ("It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants."). Nevertheless, application of this liberal standard "does not relieve [a *pro se*] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen*, 351 F.3d at 50 (internal quotation marks omitted); *see Nguedi v. Fed. Rsrv. Bank of N.Y.*, 813 F. App'x 616, 618 (2d Cir. 2020) ("[Plaintiff's] *pro se* status [does] not eliminate his obligation to support his claims with some evidence to survive summary judgment.").

*Pro se* litigants must meet the "usual requirements of summary judgment, and a *pro se* party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Crenshaw v. Herbert*, 445 F. Supp. 2d 301, 303 (W.D.N.Y. 2006) (quoting

*Hernandez v. McGinnis*, 272 F. Supp. 2d 223, 226 (W.D.N.Y. 2003)); *see also Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir. 2003) ("[M]ere conclusory allegations, speculation[,] or conjecture will not avail a party resisting summary judgment." (first alteration in original) (quoting *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996))).

## II.    42 U.S.C. § 1983

A claimant may bring a suit for damages under § 1983 "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alteration and omissions in original) (quoting 42 U.S.C. § 1983). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)). "A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of [his] federal statutory rights, or [his] constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Miller v. Vt. Assocs. for Training & Dev.*, Case No. 2:20-cv-178, 2021 WL 535816, at *2 (D. Vt. Feb. 12, 2021) (explaining that to state a claim under § 1983, the plaintiff "must allege (1) that some person has deprived him of a federal right, and (2) that the person who has deprived [the plaintiff] of that right acted under color of state . . . law" (alteration and omission in original) (quoting *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005))). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thompson v. Pallito*, 949 F. Supp. 2d 558, 569 (D. Vt. 2013) (quoting *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)).

III.    **Eighth/Fourteenth Amendment Violation**

Plaintiff alleges that Defendant acted with deliberate indifference in violation of the Eighth Amendment when he terminated Plaintiff's MAT medication and declined to provide Plaintiff medication to treat his opiate dependency.  (Doc. 33 at 8–10, ¶¶ 19–22.)  As a result, he alleges that he "suffered severe detoxification symptoms and felt like he was going to die."  (*Id.* at 8–9, ¶ 20.)  Plaintiff also appears to assert that Centurion was obligated to follow Vermont's Act 176[12] as it relates to MAT, and failure to do so constituted deliberate indifference to Plaintiff's serious medical needs.  (*Id.* at 9–10, ¶ 22.)  Finally, Plaintiff appears to allege that Defendant violated the Eighth Amendment by denying Plaintiff medical care while he was experiencing detoxification despite Plaintiff filing several grievances and sick-call slips.  (*Id.* at 11–12; *id.* at 13, ¶ 32.)

"A pretrial detainee's claims of [denial of medical care] are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment."  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (noting that "the due process rights of a person [detained but not convicted] are at least as great as the Eighth Amendment protections available to a convicted prisoner").  "Pretrial detainees have not been convicted of a crime and thus 'may not be punished in any manner—neither cruelly and unusually nor otherwise.'" *Iqbal*

---

[12]  To the extent that Plaintiff may be asserting a claim under Vermont's Act 176 against non-party Centurion, the claim may not proceed.  Under that law, an inmate who enters into a correctional facility under the prescription of a medication, including buprenorphine, methadone, or other medication prescribed in the course of medication-assisted treatment, "shall be entitled to continue that medication and to be provided that medication by the [VDOC] pending an evaluation by a licensed physician, a licensed physician assistant, or a licensed advanced practice registered nurse."  28 V.S.A. § 801(e)(1).  However, "the [VDOC] may defer provision of a validly prescribed medication in accordance with this subsection if, in the clinical judgment of a licensed physician, a physician assistant, or an advanced practice registered nurse, it is not medically necessary to continue the medication at that time." *Id.* § 801(e)(2).  The statute notes, however, that "[i]t is not the intent of the General Assembly that this subsection shall create a new or additional private right of action." *Id.* § 801(e)(4).

*v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007) (quoting *Benjamin v. Fraser*, 343 F.3d 35, 49 (2d Cir. 2003)), *overruled on other grounds by Caiozzo v. Koreman*, 581 F.3d 63, 70 (2d Cir. 2009).

Unlike the Cruel and Unusual Punishments Clause of the Eighth Amendment:

> an official can violate the Due Process Clause of the Fourteenth Amendment without meting out any punishment, which means that the Due Process Clause can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm.

*Darnell*, 949 F.3d at 35.

The failure to treat a prisoner's medical condition rises to constitutional dimension where an official acts with "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05 (footnotes omitted).

Under the Fourteenth Amendment, a pretrial detainee claiming prison officials were deliberately indifferent to his or her serious medical needs must satisfy both an objective and a subjective element of such a claim. *See Darnell*, 849 F.3d at 29. With respect to the objective element, the plaintiff must show that the deprivation of adequate medical care was "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). As to the subjective element:

> [a] pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."

*Darnell*, 849 F.3d at 35. Accordingly, "[a] plaintiff must show something more than mere negligence to establish deliberate indifference in the Fourteenth Amendment context." *Charles*

*v. Orange County*, 925 F.3d 73, 87 (2d Cir. 2019) (internal quotation marks omitted).

**A.** **Objective Element of a Fourteenth Amendment Claim: "Sufficiently Serious" Medical Condition**

To establish the objective element of a Fourteenth Amendment claim, "the alleged deprivation of adequate medical care must be 'sufficiently serious.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Salahuddin v*, 467 F.3d at 279); *see Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Because the objective element is "'necessarily contextual' and fact-specific, the serious medical need inquiry must be tailored to the specific circumstances of each case." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (alteration and citation omitted) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

A medical condition or deprivation of care is "sufficiently serious" if "a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted); *see Chance*, 143 F.3d at 702 (serious medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain" (internal quotation marks omitted)). In determining whether a sufficiently serious medical condition exists, the Second Circuit has identified an unexhaustive list of factors for courts to consider, including "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702 (alteration in original) (internal quotation marks omitted). "In most cases, the actual medical consequences that flow from the denial of care are highly relevant in determining whether the denial of treatment subjected the detainee to a significant risk of serious harm." *Charles*, 925 F.3d at 86.

Courts in this circuit have "held that, in general, a failure to treat withdrawal symptoms that are of relatively short duration does not constitute a [constitutional] violation." *Bain v. Cotton*, Civil Action No. 2:06-CV-217, 2010 WL 2756989, at *7 (D. Vt. June 10, 2010) (finding plaintiff's allegations that he suffered "symptoms of detoxification for several weeks" inadequate to defeat a motion for summary judgment); *see Avallone v. Hofman*, Nos. 2:06-CV-253, 2:07-CV-1, 2009 WL 2957955, at *5 (D. Vt. Sept. 9, 2009) (finding that symptoms including seizure, vomiting, diarrhea, and dehydration for a period of two days "do not generally provide the basis for an Eighth Amendment claim"); *Munger v. Cahill*, No. 9:16-CV-728 (BKS/CFH), 2018 WL 4635709, at *10 (N.D.N.Y. July 23, 2018) (concluding "that withdrawal symptoms such as sweating, chills, fever, diarrhea, and vomiting are not sufficiently serious for the purpose of an Eighth Amendment analysis"); *Smith v. Rutigliano*, No. 06-CV-6320 CJS, 2008 WL 5111314, at *1, *4 (W.D.N.Y. Dec. 3, 2008) (concluding that withdrawal symptoms including night sweats, chills, headaches and an upset stomach were not sufficiently serious to support a claim of medical deliberate indifference); *McNamara v. Lantz*, Civil No. 3:06-CV-93 (PCD), 2008 WL 4277790, at *14 (D. Conn. Sept. 16, 2008) (granting summary judgment for defendants where plaintiff suffered "substantial and chronic pain and discomfort" while experiencing withdrawal (internal quotation marks omitted)).

However, other district courts have held that withdrawal symptoms are sufficiently serious medical conditions for purposes of the objective element of the analysis. *See, e.g.*, *P.G. v. Jefferson County, New York*, 5:21-CV-388, 2021 WL 4059409, at *2, *4 (N.D.N.Y. Sept. 7, 2021) (finding plaintiff "is substantially likely to succeed on the merits of [his] claim" where he experienced "pain throughout [his] body, nausea, vomiting, diarrhea, anxiety, and sleeplessness" (second alteration in original)); *Lara-Grimaldi v. County of Putnam*, No. 17-CV-622 (KMK),

16

2018 WL 1626348, at *13 (S.D.N.Y. Mar. 29, 2018) ("Courts have held that drug or alcohol withdrawal alone constitutes a serious medical condition."); *Campa v. Yellowstone Cnty. Det. Facility Turnkey Nurse Staff*, Cause No. CV 22-86-BLG-SPW, 2023 WL 3305127, at *3 (D. Mont. May 8, 2023) ("The Court will presume for purposes of this order that treatment for opioid withdrawal constitutes an objectively serious medical need."); *Joseph v. Son*, No. 2:22-cv-01558-CKD P, 2023 WL 2480591, at *2 (E.D. Cal. Mar. 13, 2023) ("Drug withdrawal constitutes a serious medical need requiring appropriate medical care under the Eighth Amendment."); *Brawner v. Scott County, Tennessee*, 14 F.4th 585, 598 (6th Cir. 2021) (finding that reasonable jury could find Suboxone withdrawal was objectively serious medical need); *Tilson v. Humphrey*, Civil Action No. 5:19-cv-00033, 2021 WL 4443816, at *5 (W.D. Va. Sept. 27, 2021) (collecting cases) ("Several courts have found that symptoms of alcohol and drug withdrawal qualify as a serious medical need." (internal quotation marks omitted)).

In his Verified Amended Complaint, Plaintiff asserts that when he was removed from his MAT medication, he "experienced severe vomiting, diarrhea, stomach pains, cold sweats, hot flashes, muscle cramping, restless arm and leg syndrome, and loss of sleep for weeks" and symptoms persisted for approximately three months.  (Doc. 33 at 7, ¶ 15.)  In his Affidavit, Plaintiff alleges he "did not sleep for more than 3 hours in a night, . . . dealt with quivering legs, uncontrollable shakes and shivers at odd intervals through[]out [the] day[, a]nd [had] hot and cold sweats . . . for nearly 2 weeks."  (Doc. 69-1 at 5.)  He further describes the effects of Suboxone withdrawal to be a "near . . . 'torture-like' consequence . . . last[ing] anywhere from 30 to 60 days."  (*Id*.)  However, even assuming these unsubstantiated statements create a disputed issue of material fact with respect to whether Plaintiff's alleged deprivation of adequate medical care is "sufficiently serious," *Spavone*, 719 F.3d at 138, he has not presented evidence

"sufficient to permit a reasonable juror to return a verdict in his . . . favor" on the subjective element of his Fourteenth Amendment claim, as further explained below. *Jean-Laurent*, 461 F. App'x at 22 (internal quotation marks omitted).

### B.    Subjective Element of a Fourteenth Amendment Claim: "Deliberate Indifference"

As to the subjective element of a deliberate indifference claim, a pretrial detainee must prove that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

> "[A] detainee asserting a . . . claim for deliberate indifference to his medical needs can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health."

*Charles*, 925 F.3d at 87. "Prison officials and medical officers have wide discretion in treating prisoners, and determinations of medical providers concerning the care and safety of patients are given a presumption of correctness." *Jones v. Sheriff of Suffolk Cnty.*, 518 F. Supp. 3d 650, 657 (E.D.N.Y. 2021) (internal quotation marks omitted).

Defendant did not diagnose Plaintiff with opioid use disorder, and therefore does not have personal knowledge as to Plaintiff's medical history resulting in the initial Suboxone prescription. (Doc. 60-5 at 4, ¶ 6; *id.* at 9, ¶ 22.) Plaintiff acknowledges he "had never met with [Defendant] prior to . . . filing the V.R.C.P. . . . 75 petition," and in fact his "first interaction with medical provider Corey LeBlanc came after the filing of [his] Rule 75 petition." (Doc. 69-1 at 3.) Defendant explains that he removed Plaintiff from MAT medication upon a review of Plaintiff's medical chart, "after Plaintiff reported that he had no history of opiate use disorder

and was utilizing the MAT program for his own enjoyment rather than its intended purpose."

(Doc. 60-5 at 10, ¶ 23.)[13]  Defendant further explains he removed Plaintiff from MAT

medication after discovering that Plaintiff was not opioid dependent because "prescription

medication should not be taken by someone who does not carry the diagnosis for which the

medication is intended as that is . . . misusing prescription medication."  (*Id.* at 7, ¶ 16.)

Defendant notes that common side effects of medication used with MAT are "constipation,

headache, nausea, vomiting, dizziness, fatigue, dry mouth, tooth decay, muscle aches, inability to

sleep, fever, blurred vision or dilated pupils, tremors, palpitations, disturbance in attention,

respiratory distress, overdose, adrenal insufficiency, dependence, withdrawal, itching, pain,

swelling, and nerve damage."  (*Id.* at 7–8, ¶ 16.)  Additionally, Defendant removed Plaintiff from

MAT medication, but not the MAT program, and "encouraged Plaintiff to participate in

counseling and offered Plaintiff medications for his alcohol addiction."  (*Id.* at 7, ¶ 15.)  After

meeting with Defendant, Plaintiff reports his medication was "reduced until [he] was given a 2[-]

milligram dosage and then ceased receiving the medication."  (Doc. 69-1 at 2.)

Although Plaintiff alleges he filed several sick-call slips and grievances during his

detoxification process after being taken off Suboxone (Doc. 33 at 11–12), in his sworn

Interrogatory responses Defendant states that "facility level medical staff, such as Defendant, are

not necessarily informed of a 'grievance process' or 'Court action,'" and in fact "Defendant was

not aware of either Plaintiff's 'grievance process' and/or 'Court action' in this matter until the

Amended Complaint named him as a Defendant."  (Doc. 60-5 at 5, ¶ 9.)  Plaintiff has not offered

any evidence documenting his symptoms or demonstrating that Defendant was actually aware of

his withdrawal symptoms or received notice of any of the grievances or sick-call slips he claims

---

[13]  Plaintiff's Affidavit is consistent on this point.  (Doc. 69-1 at 2 (noting Defendant's statement to Plaintiff that he had reviewed Plaintiff's medical history and determined that Plaintiff did not have "an opiate history")).

he filed. Defendant has offered clinical reasons for taking Plaintiff off Suboxone. After Plaintiff reported that he had no history of opioid use disorder and was utilizing MAT for his own enjoyment, Defendant reviewed Plaintiff's medical chart. Defendant discovered that Plaintiff had never reported a history of opiate use and therefore determined that continued use of Suboxone was inappropriate. Defendant offered Plaintiff continued MAT services to treat his documented alcohol addiction. Although Plaintiff contends Defendant's medical decisions were inappropriate, he has not offered any contrary medical evidence to dispute Defendant's stated reasons for his decision.

Accordingly, Plaintiff has not demonstrated a genuine dispute of fact that Defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [him] even though [Defendant] knew, or should have known, that the condition posed an excessive risk to health or safety." *See Darnell*, 849 F.3d at 35.

The record evidence does not demonstrate a genuine dispute that Defendant knew failure "to provide the complained of medical treatment would pose a substantial risk to his health or that [he] *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to [Plaintiff's] health." *See Charles*, 925 F.3d at 87. The undisputed evidence shows that Defendant determined Plaintiff did not have a medical need for MAT medication and therefore stopped the medication. Plaintiff has not submitted evidence demonstrating that he had been diagnosed with opioid use disorder or required utilization of MAT. To the extent that tapering and discontinuation of MAT medication could cause Plaintiff to experience withdrawal symptoms that rise to a "sufficiently serious" level to be actionable under the Fourteenth

20

Amendment, he has provided no evidence to substantiate such a claim. He has not demonstrated a fact dispute on this issue sufficient to preclude summary judgment.

Defendant offered Plaintiff the opportunity to remain in counseling and take medication for Plaintiff's medically documented alcohol addiction. Plaintiff's Suboxone was tapered over time. While removing a patient from Suboxone may cause adverse symptoms, Defendant was also aware of the side effects from taking Suboxone, especially when medically unnecessary. Many of these symptoms are similar to Plaintiff's reported symptoms. Without any evidence in the record to substantiate Plaintiff's claim of severe withdrawal-related symptoms, Plaintiff has not raised a fact issue that Defendant recklessly failed to act to mitigate the risk posed by withdrawal such that Defendant "knew or should have known," that withdrawal "posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Mere negligence is insufficient to establish that a person acted with deliberate indifference. *See Charles*, 925 F.3d at 73. Additionally, Defendant's assessment of Plaintiff's condition and his safety is "given a presumption of correctness." *See Jones*, 518 F. Supp. 3d at 657 (internal quotation marks omitted). Thus, Defendant should be granted summary judgment on Plaintiff's claim of deliberate indifference.

## IV.    Retaliation

Plaintiff further alleges that Defendant's decision to terminate his use of MAT medication after he had filed his complaint in state court "constituted retaliation for petitioning government for redress of grievances and therefore violated [P]laintiff[']s First Amendment" rights. (Doc. 33 at 10, ¶ 24.) Plaintiff asserts that because of Defendant's actions, he "suffered a severe detox and was injured physically and emotionally." (*Id.* at 11, ¶ 25.)

21

"Courts must approach claims of retaliation with skepticism and particular care because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Vega v. Artus*, 610 F. Supp. 2d 185, 206 (N.D.N.Y. 2009) (internal quotation marks omitted). "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show . . . '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).

"The Supreme Court has described the right to petition government for redress of grievances as 'among the most precious of the liberties safeguarded by the Bill of Rights.'" *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988) (quoting *United Mine Workers v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967)). "[I]ntentional obstruction of a prisoner's right to seek redress of grievances 'is precisely the sort of oppression that . . . section 1983 [is] intended to remedy.'" *Id.* (omission and second alteration in original) (quoting *Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987)). Accordingly, the First Amendment protects a prisoner's right of access to the prison grievance system and the courts. *Id.*

"To be an 'adverse action,' retaliatory conduct must be the type that would deter 'a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). Courts "look to the specific circumstances in which retaliation claims arise, 'bearing in mind that prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse.'" *Id.* (quoting *Davis*,

320 F.3d at 353). "In order to satisfy the causation requirement, allegations must be sufficient to support the inference that the speech played a substantial part in the adverse action." *Davis*, 320 F.3d at 354 (internal quotation marks omitted). The Second Circuit has "repeatedly held that temporal proximity alone is insufficient for a prisoner's retaliation claim to survive summary judgment." *Morrow v. Bauersfeld*, 21-2928-cv, 2022 WL 17097590, at *2 (2d Cir. Nov. 22, 2022) (summary order) (collecting cases).

As petitioning government for redress of grievances is one of the First Amendment's most protected rights, filing a complaint in state court is protected speech. *See Franco*, 854 F.2d at 589. The Court will assume that removal of a detainee from MAT medication constitutes adverse action, as a detained person receiving MAT medication would likely be disinclined to file a court action if he believed it would result in the withholding of necessary medication. *See Hayes*, 976 F.3d at 272.

Plaintiff, however, has not demonstrated a triable issue on whether there was a causal connection between the filing of his state-court action and Defendant terminating his MAT medication. Defendant acknowledges removing Plaintiff from MAT medication on January 15, 2020. (Doc. 60-8 at 2, ¶ 6.) In his Verified Amended Complaint, Plaintiff asserts Defendant removed him from his medication after service of the state action "on or about January of 2020." (Doc. 33 at 5, ¶¶ 10–11.) In his Affidavit, however, Plaintiff states that he filed his state-court action in February 2020. (Doc. 69-1 at 2.) Defendant's sworn statement that he took Plaintiff off Suboxone on January 15, 2020 necessarily means that his clinical decision preceded the filing of the state-court action and therefore did not occur *because* Plaintiff filed his court case. Plaintiff has not offered any evidence from his medical file or witness testimony to create a

genuine dispute on this critical point of timing. In other words, there is no genuine fact dispute that Defendant's removal of MAT medication occurred after Plaintiff filed his state-court action.

Furthermore, Plaintiff has not demonstrated a genuine dispute of material fact with respect to whether Defendant was aware of the state-court action. He acknowledges that his "Rule 75 petition was dismissed by the Washington Superior Court due to the defendant[']s repeated allegation of never being properly '[n]oticed' of civil action." (Doc. 69 at 3.)[14] He further asserts he made several unsuccessful attempts to serve the VDOC, and the VDOC informed the court they had not been served. (Doc. 69-1 at 3.) Plaintiff states in his Affidavit that he filed his action in state court in February 2020, and it was dismissed for lack of service. (Doc. 69-1, at 2–3.); *Bedard v. Centurion Medical Healthcare*, Case No. 92-2-20 Wncv. Defendant has attested that "facility level medical staff, such as Defendant, are not necessarily informed of a 'grievance process' or 'Court action' [and] Defendant was not aware of either Plaintiff's 'grievance process' and/or 'Court action' in this matter until the Amended Complaint named him as a Defendant." (Doc. 60-5 at 5, ¶ 9.) Plaintiff offers no evidence demonstrating that, notwithstanding the apparent failure to serve Centurion, Defendant LeBlanc was nevertheless personally aware of the state-court action when he took Plaintiff off his MAT medication. In short, there is no genuine dispute of fact that Defendant knew of the lawsuit against Centurion before deciding to take Plaintiff off Suboxone.

Finally, Plaintiff has not offered any evidence contradicting Defendant's assertion that he took Plaintiff off Suboxone because his medical history did not indicate opiate dependency that would justify taking the medication. (*See* Doc. 60-5 at 10, ¶ 23.) As Defendant stated, "prescription medication should not be taken by someone who does not carry the diagnosis for

---

[14] As noted in footnote 4 above, the state action named Centurion Medical Healthcare as the defendant, not Corey LeBlanc.

which the medication is intended." (*Id.* at 7, ¶ 16.)  Therefore, even if the record showed that

Defendant terminated Plaintiff's MAT after the filing of the state-court action, there is not a

triable issue on whether the state-court action played a substantial part in the alleged adverse

action.  Plaintiff has not demonstrated a genuine dispute of fact that Defendant's decision to

terminate his MAT medication was causally related to Plaintiff's state-court action.  *See*

*Morrow*, 2022 WL 17097590, at *2.

Therefore, I recommend that summary judgment be granted in Defendant's favor on

Plaintiff's retaliation claim.

## <u>Conclusion</u>

For the reasons set forth above, I recommend that Defendant's Motion for Summary

Judgment (Doc. 60) be GRANTED, and Plaintiff's Verified Amended Complaint be

DISMISSED.

Dated at Burlington, in the District of Vermont, this 15th day of April 2024.

*/s/ Kevin J. Doyle*
Kevin J. Doyle
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after
service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all
parties, written objections that shall specifically identify those portions of the Report and
Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C.
§ 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates
as a waiver of any further judicial review of the magistrate's decision."  *Caidor v. Onondaga
Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*,
892 F.2d 15, 16 (2d Cir. 1989)).